Bovell *v.* Dubrusky, Appellant.

Argued January 8, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Arthur Lefkoe,* for appellant.

*William W. Vogel,* with him *Cassin W. Craig* and *Wisler, Pearlstine & Talone,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 17, 1958:

On April 11, 1953, at about 10:15 p.m., Herbert Bovell, the plaintiff in this case, was crossing Hector Street in Whitemarsh Township near Conshohocken at a point where it intersects with End Street, when he was struck by an automobile owned and operated by the defendant, F. J. Dubrusky, thereby sustaining serious injuries. He brought an action in trespass and was awarded a verdict of $28,000. The defendant has appealed, seeking judgment n.o.v. or a new trial.

The defendant contends that the plaintiff failed to prove that he (the defendant) was negligent in any respect. The evidence produced in behalf of the plaintiff shows that at the time of the accident the defendant

was driving his car on its wrong side of the highway. And when, in a trial, testimony reveals that a motorist was driving eastwardly on a westbound street at the time he struck a pedestrian, the motorist takes on the burden of explaining to the jury's satisfaction that his appearance on the contrary side of the highway was without fault on his part. The defendant accepted that burden. He explained that a bus was parked on the right side of the street and that he thought some passengers might walk out into the street ahead of his car. Thus, to avoid the possibility of hitting these nonexistent people he "pulled a little toward the center of the street but still on the right side." The jury did not believe the story.

The jury believed the plaintiff who said that before committing himself to the crossing of Hector Street he looked to the right and to the left and saw no traffic approaching from either direction. He repeated this wariness as he moved forward with caution and when he was "possibly a couple feet" from the center of the highway a "flash of light" appeared before him. The head lamps of an automobile bearing down on him from his right announced imminent peril to life and limb. In a split-second deliberation he decided that safety lay closer in the direction from which he had come than on the south side of Hector Street toward which he had been heading. He pivoted on his heel and scurried back toward the north side of the street. But by now the car had overtaken him and hit him head-on.

Bovell's journey terminated 45 feet from the center of the intersection where, he testified, the automobile had hit him. A police officer who appeared on the scene shortly after the collision testified that he saw fresh skid marks 42 feet in length beginning at the center of the intersection and ending 3 feet short of the point where Bovell lay in the dust.

The jury could scarcely be regarded as undeliberative and arbitrary if, from these circumstances and testimony, it arrived at the conclusion that Dubrusky violated the law of the road by driving on the wrong side of the road; by failing to observe a pedestrian in his path; and by travelling at such a speed that he either catapulted or dragged the body of the injured person 42 feet before he could come to a stop.

The defendant argues that "The evidence presented on behalf of the Plaintiff was devoid of testimony to show how the accident occurred, or whether the negligence, if any, of the Defendant was responsible for the Plaintiff's damages."

The evidence in any case does not need, or indeed cannot follow any particular pattern of unfoldment. Chance, the master architect of accidents, holds no degree in mathematics, morals, or magnanimity. He stands ever ready to pounce upon any slight deviation from normal behavior, in order to throw human beings into the whirling forces of momentum, impetus, and gravitation so as to bring about his violent masterpieces of consternation and casualty. When the dead and the wounded have been hauled away, the inquiring mind then examines the debris and the marks in the ground, it questions the survivors and the spectators, and from all the evidence decides what happened during those moments when Chance, like blind fury, wrought his irreparable harm. In court, the jury is *that* inquiring mind. Armed with a desire for justice, guided by correct principles of law announced by the presiding judge, holding diplomas themselves from the school of everyday experience, they analyze, reason, deliberate and calculate. And when they unanimously decide from what they have heard and seen that blame for the untoward occurrence lies at the feet of a certain person or persons, it is not the function of an ap-

pellate court to ask why they reached a certain con-
clusion, but only if there existed physical facts upon
which they built their verdict. We find here that such
physical facts did exist.

Dubrusky's presence in the wrong lane of traffic
was the proximate cause of the accident. What fol-
lowed accentuated and aggravated this original act
of negligence. His explanation that he moved over to
the left in order to avoid hitting persons who might
be leaving the bus did not satisfy the jury and it fails
to convince us. His creditable desire to avoid injur-
ing potential A's did not justify a carelessness which
would visit harm upon a real B.

Nor can he justify a judgment n.o.v. on the basis
of contributory negligence. It was still the jury which
had to decide whether Herbert Bovell conducted him-
self with due care as he left the sidewalk and started
across Hector Street. And we are convinced from a
reading of the record that Bovell did not violate any
of the fundamental rules of safety which would sum-
marily cut off his rights of recovery, regardless of the
negligence of the defendant.

The defendant says: "The Plaintiff's testimony that
he stopped at the curb, looked in both directions, saw
nothing, took a second look while traversing the street
and still saw nothing, and then when he got to the
center of the street only about thirty (30) feet wide
saw a flash of light and was struck down by a vehicle
which he did not see before, stamps him as incapable
of belief. It is a narration completely lacking in cre-
dence."

The jury did not find it lacking in credence. The
accident happened at night. The intersection lacked
overhead lighting. The plaintiff testified that he could
see to his right about a block or two and that on the
two occasions when he directed a glance in that direc-

tion no car was in sight. In view of the fact that the greater danger, until he reached the center of the street, would more logically hail from his left since he was traversing a westbound lane, he cannot be declared guilty of contributory negligence as a matter of law because he did not see the automobile bearing down on him from the right until the time that its head-lamps flooded his immediate vicinity. A person facing east cannot without periscopic assistance divine what is happening in the west.*

The defendant asks for a new trial urging that the verdict was against the weight of the evidence. As we look at the scales held by the jury, we do not find that the defendant's version bears down so heavily in the balance that only the counterweight of bias, arbitrariness, or caprice could have brought the plaintiff's side down to the base. Both parties threw their facts and arguments into the weighing machine and since there is no indication that the machine lacked poise and balance, we see no reason to disturb the result written in the verdict.

Affirmed.

---

* *Ulmer v. Hamilton*, 383 Pa. 398 (1956) ; *Goldschmidt et ux. v. Schumann*, 304 Pa. 172 (1931) ; and *Lamont v. Adam Express Co.*, 264 Pa. 17 (1919).