## Haushalter *v.* Woodlawn & Southern Motor Coach Company, Appellant.

Argued March 14, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Bruce R. Martin,* with him *Pringle, Bredin & Martin,* for appellant.

*Charles F. Dean,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 17, 1962:

The plaintiff in this case, Charles Haushalter, was struck by a bus belonging to the defendant, Woodlawn & Southern Motor Coach Company, and recovered a verdict of $26,000 for injuries sustained in the accident. The defendant moved for judgment n.o.v. The motion was refused and the defendant appealed.

The issue in this case was simply one of fact. Did the circumstances show that the driver of the involved bus was negligent in the manner he operated his bus which ran down the pedestrian? Was the plaintiff guilty of contributory negligence in the manner he started across a street? The jury answered the first question in the affirmative and the second in the negative. The record amply substantiates these findings.

It was 6:40 in the morning on January 15, 1953, when the plaintiff, a crane operator, walked across the Ambridge Bridge spanning the Ohio River and continued eastwardly on Eleventh Street, a continuation of the thoroughfare on the bridge. Close to the bridge, Ohioview Street, running north and south, intersects Eleventh Street. Haushalter proceeded to cross Ohio-

view Street at this point, but before doing so he looked to the left which would be north on Ohioview, he looked to his right which would be south on Ohioview and then, when he got to the center of Ohioview he paused and again looked to the right. At each of these viewings he saw no approaching vehicle.

The defendant company maintains that Haushalter was guilty of contributory negligence, as a matter of law, because he did not see the bus prior to the time it struck him and take such precaution that such view would have dictated.

The bus moved east on Eleventh Street after leaving the bridge and then began to make the turn north onto Ohioview. Here is where the collision occurred. At this point Ohioview is thirty feet wide. The plaintiff testified that he had traversed twenty-five feet of this width when he was struck from the rear with such force that he was thrown twenty-five feet north on Ohioview.

The defendant company insists that the plaintiff walked himself out of court when, as he walked east on Eleventh Street he did not turn around to see what might be following him. Wide-angled, and miraculously so, as is one's vision, man is not equipped for direct rear viewing without turning his head in that direction. And for a pedestrian, in the middle of a street, to swivel his head toward the west while his feet are propelling him toward the east, is not a practice recommended for longevity. As this Court said in *Bovell v. Dubrusky,* 391 Pa. 658, "A person facing east cannot without periscopic assistance divine what is happening in the west."

The record reveals clearly that the accident would not have occurred had the bus driver been attentive to his responsibilities of looking ahead for pedestrians in his path of travel. Under cross-examination he testified as follows: "Q. Now, while your bus was standing

there and those headlights were on didn't you look to the left to see what, if any, person was crossing over this sidewalk, cross-walk, pedestrian crossing to your left, *didn't you look over that way?* A. On the street? Q. On the street, right, *did you look?* A. Over here on the street. Q. You know what I mean when I am talking about the cross-walk, pedestrian cross-walk, don't you—this is all cross-walk all the way across the bridge, that is the walk across the bridge, is that right? A. Well, if you put it that way, *I don't know.*" (Emphasis supplied)

But the defendant argues that it is unfair to hold the bus company driver negligent for failing "to see an unlighted [sic!] pedestrian, wearing dark clothes against the dark background of an unlighted, dark surfaced street," and yet not hold the pedestrian negligent for failing to see a bus with its ample lighting. But there is this cogent difference in the requirements of the parties. A pedestrian is not directed by law to be illuminated, whereas the owner of a vehicle is obliged by statute to provide his vehicle with an adequate amount of incandescence as it travels through darkness.

The defendant quotes the familiar rule that "it is vain for a man to say that he looked and failed to see that which he must have seen had he looked." This is a good rule but it has no application here. Even if the plaintiff had seen the bus at the bridge portal he was not charged with the responsibility of knowing that the bus would turn into Ohioview. When the bus was stopped at the bridge it was facing the same direction in which the plaintiff was traveling. It was after the plaintiff committed himself to the crossing on Eleventh Street that the bus began making the turn from Eleventh into Ohioview, executing this maneuver entirely in the rear of the crane operator moving steadily ahead on his way to work. The appellant urges that the

plaintiff had the duty to turn around, but a pedestrian crossing a street, if he values his safety, must concentrate on watching where he is going and not looking back to study where he has been.

The appellant emphasizes that the bus was lighted, but this does not black out the all-controlling feature of the case, namely, that the bus struck the plaintiff from the rear. What happens behind one's back when one is engaged in facing perils ahead can never be a ground for contributory negligence in law.

Judgment affirmed.